IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JUSTIN MOSS,

                Plaintiff,

v.

JILL KOLLMAN, RANDALL HEPP, SCOTT
KINNARD, WAYNE BAUER, LANA WILSON,
EMILY DAVIDSON, TINA BRYANT, BRAD HOMPE,
CINDI O'DONNELL, MICHAEL BORN, ROBERT
WEINMAN, JESSICA HOSFELT, MEGAN LEBERAK,
and EMILY PROPSON,

                Defendants.

OPINION and ORDER

25-cv-213-jdp

---

Plaintiff Justin Moss, proceeding without counsel, alleges that prison staff at Waupun Correctional Institution filed a false conduct report against him in retaliation for his complaints about correctional staff, denied him due process when he attempted to contest the conduct report, and then provided him with inadequate medical care when he went on a hunger strike in protest. Moss proceeds without prepaying the filing fee, so I must screen the complaint under 28 U.S.C. § 1915(e)(2)(B) and dismiss any part of it that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant. I must accept Moss's allegations as true and construe them generously, holding the complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I will dismiss the complaint for failure to state a claim, but I will allow Moss to file an amended complaint to fix the issues identified in this order.

ALLEGATIONS OF FACT

The events in the complaint occurred while Moss was incarcerated at Waupun Correctional Institution. Defendants are all prison staff.

In March 2022, defendant Jill Kollman tried to provoke Moss by interfering while Moss was trying to use the phone in his cellblock. Kollman forced Moss to give her the phone by threatening him with a conduct report, then she gave the phone to another prisoner even though that prisoner didn't want it. To protest Kollman's behavior, Moss made a sign about Kollman's conduct and put it on the tier in front of his cell. When the sergeant came by, Moss told him about Kollman's conduct. The sergeant told him that there was nothing he could do, but that Moss could write a complaint about Kollman.

The next day, Kollman harassed and tried to provoke Moss during medication pass. (Moss doesn't say what specifically she did.) Kollman also threatened to retaliate against Moss for complaining to the sergeant about her behavior.

Prison warden Randy Hepp and defendant Wayne Bauer began investigating Moss for his complaints about Kollman. Defendant Scott Kinnard wrote Moss a false conduct report about his interactions with Kollman as retaliation for Moss's complaints about her. The conduct report caused Moss to be placed on unpaid leave from his job in the prison bathhouse.

Moss wrote a seven-page statement contesting the allegations in the conduct report. After Moss submitted his statement, Kinnard had Moss escorted to a strip cage in the prison, where Kinnard refused to accept the statement, threatened to put Moss in segregation, and told him to remove certain information from the statement before resubmitting it. (Moss doesn't say what was in the statement or what Kinnard asked him to remove.)

Defendant Tina Bryant found Moss guilty of all the allegations in Kinnard's conduct report. She did not review camera footage or Moss's statement, both of which contradicted the allegations in the conduct report. Moss wanted to appeal the conduct report, but prison staff refused to send him a copy of the conduct report disposition.

To protest prison staff's refusal to send him the conduct report disposition, Moss began a no-food and no-fluids hunger strike. He notified Hepp, health services staff, and others that he was beginning a hunger strike, but staff ignored him. Defendants Robert Weinman and Jessica Hosfelt "actively lied . . . about Moss's Hunger Strike and his deteriorating state in the record." Dkt. 1, ¶ 70. Defendant Megan Leberak saw Moss on the fourth day of his hunger strike. Leberak documented the hunger strike but did not give Moss meal monitoring or any health assessment monitoring. Hosfelt saw Moss again on the seventh and last day of his hunger strike. Hosfelt "disregarded Moss's Hunger Strike" and did not record anything about the visit in Moss's medical records.

About two months later, Bauer fired Moss from his job in the prison bathhouse because of his complaints about Kollman and because of Kinnard's conduct report. Around the same time, Moss finally received a copy of the conduct report disposition. He attempted to appeal the conduct report, but defendant Michael Born refused to accept it, claiming the appeal was untimely. Moss asked Hepp, who initially agreed to give Moss ten days to submit an appeal. But Hepp subsequently refused to accept Moss's appeal, saying that he should have appealed when he first received the disposition.

Wilson, Hepp, Hompe, Davidson, O'Donnell, and Propson "cover[ed] up the harassment and retaliation against Moss, and participat[ed] in the retaliatory actions, and violat[ed] and depriv[ed] Moss of his Constitutional rights." Dkt. 1, ¶¶ 91–96.

ANALYSIS

Moss asserts claims under 42 U.S.C. § 1983 and the United States Constitution for deprivation of due process, retaliation, inadequate medical care, and conspiracy.

## A. Due process

Moss asserts Fourteenth Amendment due process claims against Hepp, Kinnard, Wilson, Hompe, O'Donnell, Born, and Davidson, contending that they denied him an opportunity to contest a false conduct report that Kinnard filed against him. In certain circumstances, procedural problems related to inmate discipline can state a claim for relief under the Due Process Clause of the Fourteenth Amendment. To prevail on a procedural due process claim, a plaintiff must demonstrate that he: (1) has a cognizable property or liberty interest; (2) has suffered a deprivation of that interest; and (3) was denied due process. *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010).

As for the first and second elements, Moss hasn't alleged that any of the defendants deprived him of a cognizable liberty or property interest. The Supreme Court has explained that a prisoner's cognizable liberty interests "will be generally limited to freedom from restraint which . . . imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). A disciplinary decision that results in a long period of segregated confinement may implicate a liberty interest, but shorter periods of confinement usually do not. *Compare Lekas v. Briley*, 405 F.3d 602, 611–12 (7th Cir. 2005) (90 day period in segregation did not implicate liberty interest because conditions were not atypical and significant to alter the nature of confinement) *and Castillo v. Johnson*, 592 F. App'x 499, 502 (7th Cir. 2014) (two months in supermax conditions not long enough to create liberty interest) *with Marion v. Columbia Corr. Inst.*, 559

4

F.3d 693, 697–98 (7th Cir. 2009) (prisoner's confinement in segregation for 240 days may implicate liberty interest). Moss doesn't say in the complaint what punishment he faced as a result of the false conduct report, so he hasn't alleged that he was deprived of a cognizable liberty interest.

As for the third element, if Moss had alleged deprivation of a cognizable liberty interest, then the complaint would support a reasonable inference that Kinnard denied Moss due process during his conduct report proceedings. Prisoners have limited due process rights when challenging a disciplinary decision: they are entitled to notice of the reason for the discipline, time to prepare for the administrative review, and an opportunity to present their views to a neutral decisionmaker. *Westefer v. Neal*, 682 F.3d 679, 684–85 (7th Cir. 2012). Moss says that Kinnard refused to accept Moss's response to the conduct report. I can infer that this action denied Moss an opportunity to present his version of events to a neutral decisionmaker.

Moss's allegations would not support a reasonable inference that any of the other defendants denied him due process. Moss doesn't say anything that Wilson, O'Donnell, Hompe, or Davidson did to deny him process. As for Born and Hepp, Moss says that they denied him an opportunity to appeal the conduct report, but this allegation cannot support a due process claim because the Constitution does not require an appeal procedure for prison disciplinary actions. *Westefer*, 682 F.3d at 686.

I will dismiss Moss's procedural due process claims for failure to state a claim.

## B. Retaliation

Moss asserts claims under the First Amendment against Kollman, Hepp, Kinnard, Bauer, Bryant, Wilson, Davidson, Hompe, O'Donnell, Born, and Propson, contending that they retaliated against him for complaining about Kollman's behavior.

5

To state a retaliation claim, Moss must allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was at least a motivating factor in defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The basic rule is that the First Amendment protects a prisoner's right to file grievances, orally complain about possible civil rights violations, and pursue nonfrivolous civil rights lawsuits. *See id.* at 551; *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018); *Harris v. Walls*, 604 F. App'x 518, 521 (7th Cir. 2015). To be protected, the prisoner's speech must be "consistent with legitimate penological interests." *Whitfield v. Spiller*, 76 F.4th 698, 708 (7th Cir. 2023).

I will not allow Moss to proceed on First Amendment retaliation claims against any of the defendants because Moss's complaints about Kollman were not protected speech. Moss says that he made a sign about Kollman's behavior and placed it on the tier outside his cell. Prisoners have a First Amendment right to make grievances about conditions of confinement, but they may not do so in a confrontational manner that undermines prison discipline and order. *Watkins v. Kasper*, 599 F.3d 791, 798–99 (7th Cir. 2010) (loud, public complaint about how prison staff treated an inmate's personal property was not protected). Moss's complaints about Kollman would have been protected had they been made in the prison grievance system. But posting a public sign complaining about staff is inconsistent with the penological interests of discipline, order, and safety, and is therefore unprotected.

Even if Moss had alleged protected activity, his allegations would not support retaliation claims against most of the defendants. Moss alleges that Kollman destroyed his property, that Kinnard wrote him a false conduct report, and that Bauer fired him from his job in the prison

6

bathhouse, which might support an inference of retaliation for these three defendants. But for the remaining defendants, Moss says only that they "participat[ed] in the retaliatory actions" and "cover[ed] up the harassment and retaliation against Moss." Dkt. 1, ¶ 49; ¶¶ 91–96. These allegations are too vague and conclusory to fairly notify the defendants of what they said or did to retaliate against Moss, so they fail to satisfy the pleading requirements under Federal Rule of Civil Procedure 8. *See Arnett*, 658 F.3d at 751.

### C. Inadequate medical care

Moss asserts Eighth Amendment medical care claims against Hepp, Weiman, Hosfelt, and Leberak for failing to adequately care for Moss during his hunger strike. To state an Eighth Amendment medical care claim, a plaintiff must allege that the defendant consciously disregarded an objectively serious medical condition. *Arnett,* 658 F.3d at 750. Prison officials have an obligation to respond to a hunger strike if the inmate's refusal to eat has progressed to the point where the inmate is at risk of serious injury or death. *Freeman v. Berge*, 441 F.3d 543, 547 (7th Cir. 2006); *Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011). But a hunger strike itself is not a serious medical condition; if no serious condition has arisen from the inmate's refusal to eat, then the Eighth Amendment is not implicated. *Owens*, 635 F.3d at 955 ("[I]f weight loss and temporary discomfort are the only consequences of refusing to eat, then the inmate's choice to go on a hunger strike raises no Eighth Amendment concern.").

I will dismiss Moss's medical care claims based on his hunger strike. Moss doesn't describe any serious medical effects that he experienced because of his seven-day hunger strike, other than that he was in a "deteriorating state." Dkt. 1, ¶ 70. This allegation is too vague to allow for a reasonable inference that Moss was suffering from an objectively serious medical condition during the hunger strike.

**D. Conspiracy**

Finally, Moss asserts a § 1983 conspiracy claim against all the defendants, alleging that they conspired to deprive him of his rights under the First, Eighth, and Fourteenth Amendments. I will not allow Moss to proceed on a conspiracy claim because I have dismissed his federal claims. *See Katz-Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016) ("Without a viable federal constitutional claim, the conspiracy claim under § 1983 necessarily fails; there is no independent cause of action for § 1983 conspiracy."). In any case, Moss's allegations of conspiracy are wholly speculative and conclusory, so they fail to state a § 1983 conspiracy claim. *See Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir. 1992) ("A complaint must contain more than mere conclusory allegations of such a conspiracy; a factual basis for such allegations must be provided."); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007).

CONCLUSION

I will allow Moss to file an amended complaint that fixes the pleading problems identified in this order. In drafting his amended complaint, Moss should remember to do the following:

- Carefully consider whether he is naming proper defendants and omit defendants who did not personally participate in, or otherwise cause, a violation of his constitutional rights. Moss must take care to allege specifically what each defendant did, or failed to do, to violate his federal rights.

- Moss should avoid referring to several defendants together. For instance, if more than one defendant has taken a particular action that Moss believes supports a claim, he should identify each defendant who took that action.

- Identify by full name all the individuals he wishes to sue in the amended complaint's caption.

- Omit legal arguments other than explaining what types of claims he wishes to assert.

If Moss fails to submit an amended complaint by the deadline set below, I will dismiss the entire case and I will direct the clerk to record a "strike" against Moss under 28 U.S.C. § 1915(g). *See Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011) ("[W]hen . . . the plaintiff is told to amend his . . . complaint and fails to do so, the proper ground of dismissal is not want of prosecution but failure to state a claim, one of the grounds in section 1915(g) for calling a strike against a prisoner plaintiff.").

ORDER

IT IS ORDERED that:

1. Plaintiff Justin Moss's complaint, Dkt. 1, is DISMISSED for failure to state a claim upon which relief may be granted.

2. Plaintiff may have until December 10, 2025, to submit an amended complaint that fixes the problems identified in this order.

3. Plaintiff must file his amended complaint on the court's prisoner complaint form, which the court will send him with this order. Plaintiff must fill out the form completely. If plaintiff requires any additional space to allege his claims, he may submit no more than five supplemental pages. Any text on the form or a supplemental page must be large enough and have enough spacing between lines and in the margins for the court to read it easily.

4. The amended complaint will act as a complete substitute for the complaint. This case will proceed on only the allegations made and claims presented in the amended complaint, and against only the defendants specifically named in the amended complaint's caption.

5. Plaintiff must inform the court of any new address. If he fails to do this and defendant or the court cannot locate him, this case may be dismissed.

6. The clerk is directed to send plaintiff copies of this order and the court's prisoner complaint form.

Entered November 12, 2025.

> BY THE COURT:
>
> /s/
>
> _____
> JAMES D. PETERSON
> District Judge